**IN THE DISTRICT COURT FOR JOHNSON COUNTY, KANSAS**

ELECTRONICALLY FILED
2026 Jul 23 AM 9:45
CLERK OF THE JOHNSON COUNTY DISTRICT COURT
CASE NUMBER: JO-2026-CV-001521
PII COMPLIANT

|  |  |
|---|---|
| SAMUEL LOUIS BLATNICK,<br><br>Plaintiff,<br><br>vs.<br><br>LAIRD NOLLER AUTOMOTIVE, INC. AND MCCARTHY AUTO GROUP OF LAWRENCE, INC. D/B/A MCCARTHY HYUNDAI OF LAWRENCE<br><br><br>Defendant. | **Case No. JO-2026-CV-001521**<br><br>Ch. 60 |

### FIRST AMENDED PETITION FOR DAMAGES, PUNITIVE DAMAGES, TREBLE DAMAGES AND INJUNCTIVE RELIF AND JURY DEMAND

COMES NOW, Plaintiff, Samuel Louis Blatnick ("Plaintiff" or "Mr. Blatnick"), and for his first petition at law for damages and in equity for injunctive relief alleges as follows as against Defendants, Laird Noller Automotive, Inc. ("Laird") and McCarthy Auto Group of Lawrence, Inc. d.b.a. McCarthy Hyundai of Lawrence ("McCarthy Auto" and, collectively with Laird, the "Defendants"). All allegations are made upon information and belief unless otherwise stated. Mr. Blatnick expressly reserves his rights to amend this Petition.

### THE PARTIES

1. Plaintiff is an adult individual who resides at 15732 Oakmont Street, Overland Park, Kansas 66221. When the events at issue in this Action took place, Mr. Blatnick knew that he was interacting with "Hyundai of Lawrence." He had no idea what legal entity or entities comprised that trade name.

2. Defendant, McCarthy, is a Kansas corporation with its registered address at 675 N. Rawhide Olathe, KS 66061. It presently operates McCarthy Hyundai of Lawrence, which is located at 2829 Iowa St, Lawrence, KS 66047 (the "Dealership"). Upon information and belief, McCarthy

EXHIBIT A

purchased the Dealership in, or around, April 2026, shortly following Laird Noller's receipt of a warning from the Federal Trade Commission.

3.    Defendant, Laird, has its principal office at 935 W. 23rd Street, Lawrence, KS 66046.  Its registered agent is Abigal Fraley, and its registered address is 2245 SW Topeka Boulevard, Topeka, KS 66611. Laird owned and operated the Dealership when the events at issue occurred.

## JURISDICTION AND VENUE

4.    Venue is appropriate because McCarthy's registered address is located in Johnson County, Kansas, and the deceptive practices at issue were directed at and towards Mr. Blatnick in Johnson County, Kansas.

5.    Jurisdiction is proper in this Court, because the amount at issue satisfies this Court's jurisdictional requirement and the events at issue took place in Johnson County.

6.    This Court has subject matter jurisdiction pursuant to Kan. Stat. §20-30.

7.    Defendants have submitted to Jurisdiction and Venue within this state, because they are suppliers who, in person or through an agent or instrumentality, engaged in the subject consumer transactions at issue within this State, and specifically within Johnson County, Kansas. *See* KS 50-638.

## GENERAL ALLEGATIONS

### A. The Kansas Consumer Protection Act

8.    The Kansas Consumer Protection Act ("KCPA"), Ch 50-623, provides that, "[t]his act shall be construed liberally to promote the following policies: (a) To simplify, clarify and modernize the law governing consumer transactions; (b) to protect consumers from suppliers who commit deceptive and unconscionable practices; (c) to protect consumers from unbargained for warranty disclaimers; and (d) to provide consumers with a three-day cancellation period for door-to-door sales."

9. The KCPA defines "consumer" as "an individual, husband and wife, sole proprietor, or family partnership who seeks or acquires property or services for personal, family, household, business or agricultural purposes."

10. Plaintiff is a consumer under the KCPA.

11. The KCPA defines "consumer transaction" as, "a sale, lease, assignment or other disposition for value of property or services within this state, except insurance contracts regulated under state law, to a consumer; or a solicitation by a supplier with respect to any of these dispositions. "Consumer transaction" does not include the disposition of repossessed collateral by any supplier that is subject to and compliant with any state or federal law or rules and regulations with regard to disposition of such repossessed collateral."

12. The KCPA defines "person" as, "any individual, corporation, government, governmental subdivision or agency, business trust, estate, trust, partnership, association, cooperative or other legal entity."

13. The KCPA defines "supplier" as, "a manufacturer, distributor, dealer, seller, lessor, assignor, or other person who, in the ordinary course of business, solicits, engages in or enforces consumer transactions, whether or not dealing directly with the consumer."

14. Defendants are each a "person" and "supplier" within the meaning of the KCPA.

15. The KCPA provides as follows:

**Deceptive acts and practices.** (a) No supplier shall engage in any deceptive act or practice in connection with a consumer transaction.

(b) Deceptive acts and practices include, but are not limited to, the following, each of which is hereby declared to be a violation of this act, whether or not any consumer has in fact been misled:

***

(2) the willful use, in any oral or written representation, of exaggeration, falsehood, innuendo or ambiguity as to a material fact;

3

(3) the willful failure to state a material fact, or the willful concealment, suppression or omission of a material fact;

\*\*\*

(7) making false or misleading representations, knowingly or with reason to know, of fact concerning the reason for, existence of or amounts of price reductions, or the price in comparison to prices of competitors or one's own price at a past or future time..

\*\*\*

(12) falsely stating, knowingly or with reason to know, the reasons for offering or supplying property or services at sale or discount prices.

(emphasis added)

16.    Defendants have violated (at least) the aforementioned (2), (3), (7), and (12) in the KCPA.  The KCPA also provides as follows with respect to "unconscionable acts and practices":

**50-627. Unconscionable acts and practices.** (a) No supplier shall engage in any unconscionable act or practice in connection with a consumer transaction. An unconscionable act or practice violates this act whether it occurs before, during or after the transaction. (b) The unconscionability of an act or practice is a question for the court…"

17.    The KCPA allows injured and aggrieved persons, such as the Plaintiffs here, to recover their damages and penalties.

### B. The Transaction at Issue

18.    Mr. Blatnick's daughter turned fourteen on November 2, 2025.

19.    In Kansas, a fourteen-year-old may obtain a learners permit and drive with a licensed adult.

20.    Mr. Blatnick is an attorney who spends significant time in New York and elsewhere outside of the Kansas City metro.  From the beginning of November 2025 through the middle of January, Mr. Blatnick was traveling and away from the Kansas City metropolitan area for all but a few days.

21.     In October 2025, Mr. Blatnick and his wife agreed that their daughter (who was set to take a driver's class shortly following her birthday) should learn on the car that she would eventually be driving.

22.     Mr. Blatnick began searching for used cars and eventually decided that the Jeep Compass was the best option.  The principal factor was the cost of the vehicle, relative to its safety features.

23.     Mr. Blatnick then began searching for a used Jeep Compass.  Mr. Blatnick's price limit was $20,000, and he accordingly set his cars.com search for a price limit of $20,000.

24.     During the first week in November 2025, Mr. Blatnick saw a listing for a 2022 Jeep Compass limited on cars.com and then on Laird's website (the "Vehicle").  The Vehicle was listed for $19,999 and had approximately 13,800 miles.

25.     On the first Saturday in November, Mr. Blatnick and his family celebrated Mr. Blatnick's daughter's birthday in the Crossroads district of Kansas City.  Following the meal, Mr. Blatnick drove the Defendant's facility to inspect and test-drive the vehicle.

26.     Mr. Blatnick did so, because he was traveling to New York the following Monday and would not have an opportunity to inspect a vehicle in Kansas City until after the new year.

27.     When Mr. Blatnick arrived at the Dealership, he test-drove the vehicle and decided that he wanted to purchase it.

28.     When Mr. Blatnick and the sales associate returned to the dealership, the price quote presented to Mr. Blatnick include not only the $19,999 price and $699 for documentation (which is disclosed on Defendant's website and therefore not at issue in this Action), but also a $1,299 service and maintenance package.

29.     Mr. Blatnick told the sales associate that he did not want the Service Package.  The sales associate then instructed Mr. Blatnick that he was required to purchase a service package, or he could not purchase the vehicle.

30.     A service package was not identified (directly, indirectly or by reference) of Defendant's website page for the vehicle or in the cars.com posting.

31.     Larid intentionally failed to disclose the service package, knowing it would coerce customers to pay for it after they have decided they want to buy a specific vehicle.

32.     Mr. Blatnick would not have traveled to the Dealership to look at the vehicle if the true price had been disclosed, as his price limit was $20,000.  Mr. Blatnick would have looked at and purchased a different Jeep Compass in the Kansas City metropolitan area.

33.     Because Mr. Blatnick wanted to purchase a car for his daughter to use to learn to drive during the 2 ½ months that he would be traveling, Mr. Blatnick reluctantly purchased a service package.   Mr. Blatnick picked up the vehicle the following Monday and then traveled to New York that same day.

34.     The price of the vehicle was not $19,999, as posted by Laird's website and on cars.com, but rather $19,999 plus the price of the package (thereby making the cars.com opinion of its value incorrect and unreliable).[1]

35.     That is because there is a price increase fee for a service package, which Defendant requires all customers to purchase.

36.     There are ethical ways Laird could encourage buyers to purchase the add-on. Before the events at issue, Plaintiff had looked at one car in Chicago, where the sticker at the dealership had similar add-ons from the listed price that were not identified in the online listing, including a similar interior protection (for $395). However, that add-on was not included in the listed price, and they add-on was not required to be purchased.

37.     Other, ethical dealers disclose their required add-ons in their advertised pricing, making it clear that the price is part of the actual price.  The following is an example of a dealer that requires window-tinting to be included:

---

[1] Laird's website did disclose the applicable documentation fees.



38.    The bottom line is as follows: the actual price of the Vehicle was more than advertised by Laird on both cars.com and its website.  Plaintiff relied upon the advertised price to elect to purchase that specific vehicle on the one day he had available to purchase a car before extensive travel.

39.    Cars.com includes the following disclaimer, which makes clear that the information for the Vehicle that was posted on its website was the responsibility of the Laird:

> **Cars.com Disclaimer:** The information on vehicles provided in this service is supplied by the seller or other third parties; Cars.com is not responsible for the accuracy of such information. Cars.com provides this service and materials without representations or warranties of any kind, either expressed or implied. **Click here** for more details.

40.    Mr. Blatnick is not the only person to take issue with Laird's business practices. The following appears on the Better Business Bureau website:

> **Review fromKathy W**
> **Date:** 06/17/2025
> 1 star

7

RUDE, they only cared about the "other" sales items Like their Advantage package,etc. They really talk about that "bird poop protection" and "nitrogen filled tire" $1999 package.. (BTW - you don't have to buy, it is not "already on the car") small print or not…

41.     In March 2026, Laird Noller received a warning letter from the Federal Trade Commission.  In the letter, the United States informed Laird Noller that it was engaging in several deceptive and unlawful practices.  Upon information and belief, without such unlawful conduct, the dealership was not profitable.  Laird Noller was one of only 97 dealerships in the entire country to receive such warning.

42.     Upon information and belief, Laird sold the Dealership to McCarthy in, or around, Aprile 2026.   Upon information and belief McCarthy does not engage in the deceptive practice at issue in this Action.  Upon information and belief, the sale was a direct result of the FTC's letter and sale was necessary, because Laird Noller's unlawful enterprise had been uncovered.

43.     Plaintiff has attempted to research the nature of the sale.  However, because both Defendants are private, Plaintiff has not been able to determine the structure of the transaction.  Plaintiff asserts claims against McCarthy under the legal theory of "successor liability," as it continues to operate the Dealership as it was under the ownership of Laird.

44.     The doctrine of successor liability is an equitable doctrine. *See Ramsy v. Adams,* 603 P.2d 1025 (Kan. 1979) (corporate veil pierced "when equity demands").  Under Kansas law, the application of an equitable doctrine rests within the sound discretion of the district court.  *See Consolver v. Hotze,* 395 P.3d 405 (Kan. 2017).

45.     Where assets are sold, the general rule is that liability does not likewise transfer to the purchaser.

46.     However, Kansas recognizes four exceptions to that general rule: (1) the purchaser expressly or impliedly agrees to assume such debts; (2) the transaction amounts to a consolidation or merger of the corporations; (3) the purchasing corporation is merely a continuation of the selling

corporation; and (4) the transaction is entered into fraudulently in order to escape liability for the seller's debts.

47.    Mr. Blatnick reserves his right to dismiss McCarthy without prejudice should he determine that none of the aforementioned exceptions are applicable.   However, from Mr. Blatnick's view, he dealt with "Hyundai of Lawrence," rather than any specific entity, and it appears to Mr. Blatnick that exception (3) is applicable (and perhaps (1) and (2)).

48.    Before filing this Action, Mr. Blatnick sent this Petition to the registered agents for both Defendants and attempted to resolve the matter without the need for litigation.  He was not successful.

49.    In response, Defendants' counsel responded, informing Mr. Blatnick that he didn't actually purchase the $1,299 package, but rather purchased a different (mandatory) package for $899.  This bellies the fundamental point: Plaintiff didn't even know what he purchased, only that he didn't want any package, but ultimately was forced to buy a $899 package (apparently the lowest mandator package), which he has never used and did not want.   Thus, while Mr. Blatnick went to see a vehicle that was listed as $19,999, he was forced to purchase a vehicle and service plan for (i) 20,089.87; (ii) plus $859 for the required add-ons; (iii) plus the (disclosed) administrative fee. The bottom line is the actual price was more and different than advertised, and Plaintiff intentionally did not disclose the actual price.

50.    While Mr. Blatnick was negotiating, asking that any package be removed, he overheard a young couple a few feet away who also were (clearly) surprised and shocked when told they, too, had to purchase a service package.

**COUNT I**
**VIOLATIONS OF THE KCPA**

50.    Plaintiff repeats and re-alleges the foregoing paragraph 1 through 49 as if repeated and fully set forth herein.

51.    Plaintiff is a person within the meaning of the KCPA.

9

52. Defendants are suppliers within the meaning of KCPA.

53. Laird actively and knowingly participated in deceptive and unconscionable conduct within the meaning of the KCPA.

54. Plaintiff was damaged injured and aggrieved as a direct and proximate result of Laird's conduct.

55. Upon information and belief, Laird continues to implement and use its deceptive and improper business practice at its other Kansas dealerships.

56. McCarthy is liable on account of Laird's conduct under the doctrine of successor liability.

57. Plaintiff is entitled to receive a civil fine from each of the Defendants in the amount of at least $10,000 for each violation at issue.

## COUNT II:
## COMMON LAW FRAUD

58. Plaintiff repeats and re-alleges the foregoing paragraph 1 through 57 as if repeated and fully set forth herein.

59. Laird affirmatively marketed the Vehicle at a specific price and as that price being lower than certain metrics. Laird falsely represented that the "price" was lower than a measurable threshold, when it wasn't.

60. The actual price of the Vehicle is more than represented and higher than the referenced metrics.

61. Laird intentionally misrepresented the price of the Vehicle to Plaintiff.

62. Laird failed to disclose necessary information to Mr. Blatnick, as it does regularly as part of its business.

63. Plaintiff reasonably relied upon the information provided on www.cars.com and Laird's website.

64. McCarthy is liable to Plaintiff under the theory of successor liability.

65.     Plaintiff was damaged and injured as a result of the intentional fraud and fraudulent concealment of necessary information.

## COUNT III:
## CIVIL RICO (18 U.S.C. 1964(c))

66.     Plaintiff repeats and re-alleges the foregoing paragraph 1 through 65 as if repeated and fully set forth herein.

67.     For several years, Laird Noller operated the subject dealership.

68.     The dealership was an unlawful front.

69.     While unsuspecting customers believed the dealership was profiting from the sale of cars, it was not.

70.     In fact, the dealership was a front for an unlawful enterprise.

71.     The dealership used the mails and wires to perpetrate its unlawful enterprise.  With respect to Mr. Blatnick, wire fraud was used through fraudulent emails, telephone calls and website posts.

72.     On an ongoing and continuing basis, Laird Noller engaged in highly unlawful and deceptive practices, and  such unlawful practices were the source of its actual income.

73.     As such, Laird Noller is no different than an Italian deli in Red Hook Broolyn.  On the face, the deli sells sausage, but in reality the business is there to launder money and host illegal gamling in the back room.

74.     The same is true for Laird Noller.  From the street, it was a legitimate car dealership. In fact, that dealership was a front for unlawful conduct from which the dealership actually profited.

75.     Upon information and belief, Laird Noller continues its unlawful and deceptive practices at its other Kansas locations.

11

76.    Without immediate injunctive relief, Laird Noller will continue to engage in its unlawful practices, and innocent Kansans will be harmed.

77.    Laird Noller and its subject sales representative, including the man of apparent Indian descent who sold the subject vehicle to Mr. Blatnick, comprised an enterprise in fact and at law, cooperating to engage in unlawful conduct on an ongoing basis.

78.    Mr. Blatnick is entitled to injunctive relief, treble damages, attorneys' fees, and any other legal or equitable relief this Court deems appropriate.

## C. Reservation of Rights

79.    Plaintiff expressly reserves his rights to amend his Petition to seek punitive damages at the appropriate time in this Action.

**JURY DEMAND**

Mr. Blatnick demands a jury trial for any and all matter that may lawfully be submitted to a jury.

**REQUESTED RELIEF**

**WHEREFORE**, Mr. Blatnick demands judgment as follows as against the Plaintiffs jointly and severally:

1. Finding that Defendants violated the KCPA;

2. Awarding civil penalties and/or damages as against Defendants for each violation of the KCPA in the amount of $10,000;

3. Award Plaintiff his actual damages;

4. Awarding Plaintiff treble damages;

5. Awarding Plaintiff his legal fees and costs related to this Action pursuant to the KCPA 50-634 and/or as otherwise available at law or in equity, including civil RICO;

6. Awarding preliminary and permanent injunctive relief preventing Defendants from engaging in the fraudulent conduct identified herein at any dealership they individual

or collectively own and/or operate and/or have power to establish or remove the offending practice;  and

7. Any such other and further relief as the Court deems equitable and just under the circumstances.

**<u>GENERATIVE ARTIFICIAL INTELLIGENCE ("GENERATIVE A.I.")<br>CERTIFICATION</u>**

I hereby certify that pursuant to Local Rule 3.7, the undersigned hereby certifies that no portion of the above and forgoing Petition for Damages and Injunctive Relief and Jury Demand was drafted/prepared using Generative A.I.

Dated:  July 23, 2026                    Respectfully submitted,

*__BLATNICK LAW LLC__*

By:       */s/ Samuel L Blatnick*
          Samuel Louis Blatnick, Esq.
          15732 Oakmont Street
          Overland Park, KS 66221
          (KS # 27122)
          samblatnick@gmail.com
          Advocacy-Integrity-Results™

13